CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

July 03, 2024

LAURA A. AUSTIN, CLERK
BY:  s/ FELICIA CLARK
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

JAMES BARB, *Individually and for Others Similarly Situated*,

        Plaintiff,

v.

HEATH CONSULTANTS, INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:23CV00058

**OPINION AND ORDER**

JUDGE JAMES P. JONES

*Argued:* David M. Mathews, JOSEPHSON DUNLAP LLP, Houston, Texas, for Plaintiff; David L. Barron, COZEN O'CONNOR, Houston, Texas, Jerry W. Kilgore, COZEN O'CONNOR, Richmond, Virginia, and Austin G. Dieter, COZEN O'CONNOR, Chicago, Illinois, for Defendant.

In this hybrid action, James Barb sues his employer, Heath Consultants, Inc. (Heath), asserting a collective claim for unpaid wages and overtime under the Fair Labor Standards Act (FLSA), as well as a Rule 23(b)(3) class claim under the Virginia Overtime Wage Act (VOWA) and the Virginia Wage Payment Act (VWPA). He has now filed a motion to conditionally certify the conditional collective claim as well as certify the separate class claim. Heath has also filed a motion for partial summary judgment. After careful consideration of the briefing and oral argument, I will grant the motions for certification, as well as the employer's motion for partial summary judgment.

I. Background.

The defendant Heath provides underground utility locating services to its clients in Virginia and other states.  It employs workers, including plaintiff Barb, to travel to different sites to find and mark any buried pipes, cables, or wires.  This work assists Heath's clients in avoiding these utilities during any excavations they perform.[1]  These hourly-paid employees, known as Utility Locators (ULs), are covered under the FLSA and the relevant state wage and hour laws.

It is alleged that the ULs are expected to complete their location work in at least 24 separate sites (called "tickets") in an eight-hour day.  They are each provided a company-owned vehicle which they use to commute to the first ticket site of the workday, travel between each scheduled ticket site, and finally commute home.  Personal use of the vehicle is forbidden.

Three separate claims by Barb are made in support of his motion to conditionally certify a class for the FLSA collective action and to certify a Rule 23(b)(3) class.[2]  They are referred to by Barb as employer Heath's "ticket-to-ticket

---

[1] "In other words, Heath's Utility Locators are the 'call before you dig' people." Mem. Supp. Barb's Mot. Conditional Certification & Class Certification 1, ECF No. 31.

[2] As noted in *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100–02 (9th Cir. 2018), the term "conditional certification" may be considered a misnomer in the FLSA context, since the court plays no express gatekeeper role under the FLSA but is only charged with approving the notice to other workers allowing them to opt-in to the action as additional parties if they are similarly situated.  Nevertheless, the words and two-step procedure are in common use, *id.* at 1102, 1108–10, and will be followed here.  A Rule 23 class, of course, does expressly require an order of certification.  Fed. R. Civ. P. 23(c).

policy," "auto-deduct policy," and "fringe pay scheme."  Mem. Supp. 1, ECF No. 31.

## A. Ticket-to-Ticket Policy.

Heath's ticket-to-ticket policy requires ULs to clock in when they arrive at their first assigned ticket and clock out after their last assigned ticket.  According to Barb, Heath has strict operational and productivity requirements, and closely tracks the ULs' productivity using its ticketing system as well as GPS trackers and dash cams placed on the company vehicles.  The plaintiff alleges that Heath requires ULs to perform compensable work before arriving at their first assigned ticket and after leaving their last ticket.  Specifically, to meet Heath's productivity requirements, it is claimed the ULs must review tickets, plan their routes, speak to clients, perform mandatory vehicle inspections, pick up necessary supplies from Heath's facility, load and unload company equipment from the vehicle, attend meetings, and respond to emergencies without pay.  It is asserted that the ULs spend approximately one to three hours each week performing these tasks, which are essential to the work performed by the ULs.  The plaintiffs allege that the ticket-to-ticket policy violates the FLSA and VOWA by depriving the ULs of overtime pay for work they performed before they clocked in and after they clocked out.  In addition, they allege that the policy deprived the ULs of their earned wages in violation of the VWPA.

## B. Auto-Deduct Policy.

Under the so-called auto-deduct policy, Heath's payroll system automatically deducts 30 minutes to account for meal breaks if the employee does not punch in and out for lunch. Heath contends that a UL may submit a request to have the lunch deduction retroactively removed by their supervisor if the employee worked through lunch. Barb alleges that the ULs were not aware of any procedure to report to Heath that they were unable to take a meal break.

Barb contends that to meet the strict productivity requirements set by Heath, the ULs must work through their unpaid meal breaks. Instead of taking their meal breaks, the ULs complete tickets, drive from one ticket to another, speak with Heath's clients over the phone, and plan their routes. Barb argues that the work performed by ULs during their unpaid meal breaks is compensable under the FLSA and VOWA (Counts I and II) because Heath knew or should have known that the ULs were interrupted by work-related matters during attempted meal breaks or forced to skip their breaks entirely. In addition, he contends that Heath has violated the VWPA because Heath is depriving the ULs of earned wages (Count III).

## C. Fringe Pay Scheme.

Barb and other ULs are required by Internal Revenue Service regulations to be credited with a small but taxable fringe benefit amount each workweek representing their use of a company vehicle. Barb argues that this taxable fringe pay

should be counted as part of an UL's total remuneration for the purposes of calculating overtime wages. Barb alleges that Heath's failure to pay him overtime wages that account for the taxable fringe amount he receives each week is a violation of the FLSA and VOWA (Count III). Heath contends that the taxable fringe is not remuneration but rather a line item to comply with the IRS's requirement that employers withhold taxes on the fixed imputed benefit an employee receives from their use of a company-owned vehicle. Heath has moved for partial summary judgment as to this claim.

## II. FLSA CERTIFICATION.

"Courts in the Fourth Circuit follow a two-stage approach to FLSA certification." *Mendoza v. Baird Drywall & Acoustic, Inc.*, No. 7:19-CV-882, 2021 WL 2435873, at *3 (W.D. Va. June 15, 2021). "At the first stage, the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court." *Id.* The court's initial inquiry proceeds under a "fairly lenient standard" and requires only "minimal evidence." *Id.* (citation omitted); *see also Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011) ("The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (internal quotation marks and citations omitted). "The primary focus in this inquiry is whether the

potential plaintiffs are similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Mendoza,* 2021 WL 2435873 at *3 (internal quotation marks and citations omitted).  "In assessing whether conditional certification is appropriate, the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Spencer v. Macado's, Inc.*, No. 6:18-CV-00005, 2019 WL 4739691, at *2 (W.D. Va. Sept. 27, 2019) (internal quotation marks and citation omitted).  "If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." *Romero*, 796 F. Supp. 2d at 705.

The second stage occurs if the defendant files a motion for decertification, typically after discovery is complete. *Spencer*, 2019 WL 4739691, at *2.  As in the first stage, it must be shown that the members are similarly situated.  However, the court applies a heightened fact specific standard at the second stage. *Id.* (citing *Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 299 (W.D.N.C. 2013)).  If it is established that the collective members are similarly situated, the collective action proceeds to trial. *Long*, 292 F.R.D. at 299.  If not, "the class is decertified and the original plaintiffs may proceed on their individual claims." *Id.*

The FLSA does not define "similarly situated" and the Fourth Circuit has not clarified its meaning. *Mendoza*, 2021 WL 2435873, at *3.  Courts within the Fourth

Circuit have found that putative class members are similarly situated if they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Romero*, 796 F. Supp. 2d at 705 (citation omitted). "There must be sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2012 WL 4739534, at *4 (E.D. Va. Oct. 2, 2012) (citation omitted). However, the class members' situations do not need to be identical. *Romero*, 796 F. Supp. 2d at 705. "Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Id.* (internal quotation marks and citation omitted).

The plaintiff seeks conditional certification of a nationwide class of Heath ULs who were subject to the same pay policies alleged to violate the FLSA. In support of the motion for conditional certification, Barb has provided his own declaration and the declarations of ten other ULs. The plaintiff contend that the ULs are similarly situated in that they are all subject to uniform policies that violate the FLSA, namely the ticket-to-ticket policy, the auto-deduct policy, and the alleged fringe pay scheme.

The plaintiff and potential opt-in plaintiffs:

- Had the same job duties of locating and marking underground utilities;

- Are classified as non-exempt and paid on an hourly basis;

- Were required to perform work off the clock due to Heath's ticket to ticket policy and were not paid for work performed prior to their first ticket and after their last ticket;

- Were often unable to take meal breaks due to Heath's demanding productivity requirement, even though the timekeeping system automatically deducted 30 minutes each day for a meal break;

- Were unaware of any procedure to report to Heath that they did not take a meal break; and

- Were paid a taxable fringe benefit that was excluded by Heath when calculating their regular rates of pay for overtime purposes.

At the first stage, only a "modest factual showing sufficient to demonstrate that [the] plaintiffs together were victims of a common policy or plan that violated the law" is needed. *LaFleur*, 2012 WL 4739534, at *10 (internal quotation marks and citation omitted).

Heath maintains that conditional certification should not be granted. First, Heath argues that the plaintiffs have not pointed to an unlawful policy that would support an FLSA collective action. The defendant contends that the ticket-to-ticket

policy, auto-deduct policy, and the alleged fringe pay scheme are all facially lawful. However, practices or unwritten policies, if "implemented consistently . . . on an ongoing basis" can be sufficient to violate the FLSA. *MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011); *see also Larson v. True Select, LLC*, No. 5:21-CV-00077, 2022 WL 422168 (W.D. Va. Feb. 11, 2022) (granting plaintiffs' motion for conditional certification where the defendant home care service company had a practice of not paying overtime).

Second, Heath points to its written policies that specify that ULs should perform work-related tasks while on the clock and that require ULs to inform their supervisors if a meal break was erroneously deducted. Barb alleges that the ULs were forced to work off the clock because of Heath's demanding productivity requirements, not because of any written policies. In *Loy v. Rehab Synergies, L.L.C.*, the Fifth Circuit affirmed the district court's decision to grant conditional certification and stated that company policies requiring FLSA compliance and prohibiting off-the-clock work were not dispositive "given the evidence that Rehab Synergies also had an unwritten policy or practice of off-the-clock work." 71 F.4th 329, 338 (5th Cir. 2023).

Lastly, Heath argues that conditional certification should be denied because individual determinations of pre- and post-shift work and missed meal breaks are required to establish liability. Heath states that whether each plaintiffs missed a meal

period or performed off the clock work prior to or after punching in and out is a highly individualized question that makes certification inappropriate.  In *Sands v. Blue Ridge Rock Festival*, the plaintiff bartenders and their assistants (barbacks) alleged that the defendants did not pay them the federal minimum wage or overtime and unlawfully took their assigned tips.  No. 6:22-CV-00056, 2023 WL 3097223, at *4 (W.D. Va. Apr. 26, 2023).  The defendants argued that the plaintiffs' claims were highly individualized, involving different experiences "with the sign-in and sign-out process [and] tip pool procedure . . . at a painstaking level of detail."  *Id.* at *2 (internal quotation marks and citation omitted).  However, the court granted the plaintiffs' motion for conditional certification.  It found that "[t]he claims regarding Defendants' alleged unlawful failure to pay required minimum wage, overtime, and unlawful taking of tips are all highly similar. Further, the alleged facts underlying those claims overlap to a great degree."  *Id.* at *4.

Here, all ULs were employed by Heath and were alleged to be subject to the same company policies, productivity requirements, and expectations.  Barb has presented facts sufficient to meet his burden at the first stage of conditional certification.  If I were to review evidence that the plaintiffs' claims are too individualized at this preliminary certification stage, it "would amount to this Court resolving factual disputes between the parties."  *Id.* at *5 (internal quotation marks and citation omitted).  "[I]t is not the Court's role to resolve factual disputes, decide

substantive issues going to the ultimate merits or make credibility determinations at the preliminary certification stage of an FLSA collective action." *Id.* (quoting *Barrus v. Dick's Sporting Goods, Inc.*, 456 F. Supp. 2d 224, 230 (W.D.N.Y. 2006)).

For these reasons, I will grant the motion for conditional certification of the FLSA action.

## III.   RULE 23 CLASS ACTION CERTIFICATION.

Under the Federal Rules of Civil Procedure, a party seeking class certification must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). [T]he class action must also "fall within one of the three categories enumerated in Rule 23(b)." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citation omitted). Barb seeks certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As the Supreme Court has stated:

> A party seeking class certification must affirmatively demonstrate his compliance with the Rule — that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We recognized in [*Gen. Tel. Co. of Sw. v.*] *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S. [147,] 160 [1982], and that certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161 [ ]; *see id.*, at 160[ ] ("[A]ctual, not presumed, conformance with Rule 23(a) remains ... indispensable").

> Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.

*Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350–351 (2011).

### A.  Numerosity and Ascertainability.

To satisfy numerosity, the plaintiff must show that the class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  There is "[n]o specified number [that] is needed to maintain a class action.  Rather, an application of the rule is to be considered in light of the particular circumstances of the case." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (internal quotation marks and citation omitted).  A class as small as 18 members has been approved.  *Id.* (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967)).

In this case, the proposed class includes all individuals who worked for Heath as ULs in Virginia who were subject to Heath's ticket-to-ticket policy, auto-deduct policy, and/or the fringe pay scheme at any time during the three years prior to the Complaint being filed.  The plaintiffs state that the putative class is estimated to be at least 50 ULs, which easily satisfies the numerosity requirement.  Heath does not contest that the plaintiffs have met the numerosity requirement.

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable."  *EQT Prod. Co.*, 764 F.3d at 358 (internal quotation marks and citation omitted).  Under this ascertainability requirement, a

class "cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* Here, all members of the proposed class worked for Heath and are ascertainable. The ticket-to-ticket and auto-deduct policies likely apply to all of Heath's ULs and employees who were subject to the fringe pay scheme can be easily identified from the payroll system. Furthermore, all ULs who used company-owned vehicles were subject to the auto-deduct policy.

### B.   Commonality.

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "threshold requirements of commonality and typicality are not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (internal quotation marks and citation omitted). The plaintiffs' claims "must depend upon a common contention." *Wal-Mart Stores, Inc.,* 564 U.S. at 350. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Barb has put forward a common issue of law, whether Heath's ticket-to-ticket policy, auto-deduct policy, and fringe pay scheme, as applied, violated state law, and common factual questions, whether the implementation of the policies resulted in Heath failing to pay its ULs for all hours work and whether Heath's conduct was willful or reckless.

Heath argues that liability must be determined on an individual basis for each plaintiff. For example, to show that Heath is liable to Barb for the auto-deduct policy, Heath contends that Barb will have to present evidence that he worked through lunch, Heath suffered or permitted this work, and failed to pay him. Def.'s Opp'n 18, ECF No. 33. In essence, Heath argues that "the necessity for an individual inquiry for each employee to determine liability precludes commonality." *Id.* at 19.

The plaintiff has satisfied the commonality requirement. All of the declarants worked as ULs for Heath. All of them were subject to the ticket-to-ticket policy, auto-deduct policy, and fringe pay scheme. The declarants state that Heath required them to work off the clock. Factual differences in whether a plaintiff worked through lunch on a particular day do not defeat commonality.

## C. Typicality.

Typicality concerns whether the class representatives are members of the class and "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw.*, 457 U.S. at 156 (internal quotation marks and citations omitted). The typicality requirement is concerned with due process and asks whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 157 n.13. The "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own

individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 465–467 (4th Cir. 2006). "That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 467.

The class Barb seeks to certify consists of ULs who worked in Virginia who were subject to the ticket-to-ticket policy, auto-deduct policy, and fringe pay scheme. Heath argues that Barb's claims are too individualized and that the plaintiffs' claims rely on their individual adherence or nonadherence to Heath's policies. However, the three policies or practices charged in the Complaint affected Barb and all members of the proposed class. All members worked as ULs and were subject to the same demands and workplace culture. "Any differences in the amount of damages suffered by the members of the class do not make the plaintiffs' legal claims atypical of the proposed class, as the slight factual differences do not alter the nature of the claims." *Siquic v. Star Forestry, LLC*, No. 3:13CV00043, 2015 WL 5818263, at *5 (W.D. Va. Oct. 5, 2015) (internal quotation marks and citations omitted). Therefore, the plaintiffs have sufficiently established typicality.

### D. Adequacy.

The last 23(a) requirement is adequacy. To satisfy this requirement, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). First, proposed class representatives must be members of the class they purport to represent, and their interests must not conflict with those of

the other class members. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338–39 (4th Cir. 1998). Second, class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Messer v. Bristol Compressors Int'l, LLC*, No. 1:18CV00040, 2019 WL 2550328, at *4 (W.D. Va. June 20, 2019) (internal quotation marks and citation omitted). No objection has been raised as to this requirement, and I find that proposed class counsel meets that test.

As an UL who worked in Virginia and was subject to the policies or practice named in the Complaint, Barb is a member of the class he seeks to represent. Barb's interests are aligned with and do not conflict with the interests of the class.

E.   Rule 23(b)(3) Requirements.

Since the plaintiff seeks to certify the proposed class under Rule 23(b)(3), he must satisfy two additional requirements — predominance and superiority. Fed. R. Civ. P. 23(b)(3). The first requires that common questions of law or fact predominate over individual questions. The predominance requirement is "more demanding" than the commonality requirement. *EQT Prod. Co.*, 764 F.3d at 365 (citation omitted). "[T]he mere fact that the defendants engaged in uniform conduct is not, by itself, enough to satisfy the predominance requirement." *Adair v. EQT Prod. Co.*, 320 F.R.D. 379 (W.D. Va. 2017) (internal quotation marks and citation omitted).

As discussed, there are common questions of law or fact in this case. The defendant argues that individual questions predominate the ticket-to-ticket policy

and auto-deduct policy. Heath states that when the policy at question is facially compliant with the law, predominance is not met as liability hinges on each plaintiff's compliance with the policy and relies on several cases, including *Villa v. United Site Services of California, Inc.*, where the plaintiff argued that the defendant's formal written policy required employees to work through meal breaks and that the employee handbook should be interpreted as forbidding employees from leaving their trucks during meal breaks. No. 5:12-CV-00318-LHK, 2012 WL 5503550, at *7 (N.D. Cal. Nov. 13, 2012). The court found that the policies were ambiguous, and as the managers and proposed class members interpreted and implemented the policies differently, the commonality and predominance requirements were not met. *Id.* In *Ramirez v. United Rentals, Inc.*, the defendant company left meal break compliance up to its branch managers, resulting in break practices that varied significantly from branch to branch. No. 5:10-CV-04374 EJD, 2013 WL 2646648, at *5–6 (N.D. Cal. June 12, 2013). Therefore, the evidence did not support a finding that common questions predominated over individual ones. *Id.* at *6. In *Reed v. Empire Auto Parts, Inc.*, the named plaintiff failed to present evidence that showed that other employees missed their meal breaks. No. 13-5220 (RMB/AMD), 2015 WL 761894, at *6 (D.N.J. Feb. 23, 2015). In *Jarosz v. St. Mary Medical Center*, the defendant medical center switched from a timekeeping system that automatically deducted thirty minutes for meal breaks to one that asked

employees if they had taken a meal break.  No. 10-3330, 2014 WL 4722614, at *2 (E.D. Pa. Sept. 22, 2014).  Notably, under the new system, immediate supervisors were in charge of scheduling meal breaks and individual departments had differing policies for scheduling meal breaks.  *Id.* at *3, 5.

These cases cited by the defendant are distinguishable.  Here, the plaintiff does not contend that Heath's written policies were facially unlawful or inconsistently implemented.  He argues that Heath encouraged off the clock work by imposing demanding productivity requirements on the plaintiffs, a uniform expectation that, when combined with Heath's timesheet and payroll policies, led to Heath's failure to pay them for all work performed.  In contrast to *Ramirez* and *Jarosz*, there is nothing to suggest that the policies were not uniformly administered and enforced among the ULs. Each declaration supports this claim.  "The need for individualized proof of damages alone will *not* defeat class certification."  *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003).  The plaintiffs have accordingly satisfied the predominance requirement.

The second requirement states that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The court should consider:

> (A)   the class members' interests in individually controlling the prosecution or defense of separate actions;

-18-

(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)  the likely difficulties in managing a class action.

*Id.*  The first factor favors a class action as the individual damages are small compared to the financial burden of litigation.  The plaintiff notes that individual class members worked off the clock one to three hours a day at most.  Mem. Supp. 13, ECF No. 31.  There is no ongoing litigation on the issue of whether Heath's policies violate Virginia law.  *Id.*  As to the third factor, Barb serviced sites located within this judicial district as a UL and there is no reason that this court would not be an appropriate forum.  Lastly, the plaintiffs state that the number of putative class members would not pose significant manageability concerns.  The defendant takes issue with the fourth factor and contends that individual trials on the issue of damages would make a class action difficult to manage.  As stated above, individualized damages alone will not defeat class certification.  *Gunnells*, 348 F.3d at 429.  There is also no evidence that individual trials are required.  A class action is thus superior to other methods of adjudicating this controversy.

## IV.  DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view all the evidence in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

Heath argues that as a matter of law the fringe benefit is not remuneration but rather a paystub line item ensuring that the ULs pay taxes on the fixed imputed benefit they receive from their use of a company-owned vehicle. Heath asserts that the fringe benefit should therefore not be included in the regular rate of pay when calculating overtime payment.

"A fringe benefit is a form of pay for the performance of services." Employer's Tax Guide to Fringe Benefits, I.R.S. Pub. No. 15-B, at 3 (2024), https://www.irs.gov/pub/irs-pdf/p15b.pdf. "For example, [an employer] provide[s] an employee with a fringe benefit when [the employer] allow[s] the employee to use a business vehicle to commute to and from work." *Id.* "Any fringe benefit . . . is taxable and must be included in the recipient's pay unless the law specifically

-20-

excludes it." *Id.* There are several ways to calculate the value of the fringe benefit received from using an employer-provided vehicle.  One method, called the Commuting Rule and used by Heath, is to assign $1.50 for each one-way commute if the following criteria are met by the employer and employees with respect to the vehicle:

(i)     The vehicle is owned or leased by the employer and is provided to one or more employees for use in connection with the employer's trade or business and is used in the employer's trade or business;

(ii)    For bona fide noncompensatory business reasons, the employer requires the employee to commute to and/or from work in the vehicle;

(iii)   The employer has established a written policy under which neither the employee, nor any individual whose use would be taxable to the employee, may use the vehicle for personal purposes, other than for commuting or de minimis personal use (such as a stop for a personal errand on the way between a business delivery and the employee's home);

(iv)    Except for de minimis personal use, the employee does not use the vehicle for any personal purpose other than commuting; and

(v)     The employee required to use the vehicle for commuting is not a control employee of the employer (as defined in paragraphs (f) (5) and (6) of this section).

26 C.F.R. § 1.61-21(f).  Under the Commuting Rule, the $1.50 for each one-way commute "must be included in the employee's wages or reimbursed by the employee."  Employer's Tax Guide to Fringe Benefits, I.R.S. Pub. No. 15-B, at 25 (2024), https://www.irs.gov/pub/irs-pdf/p15b.pdf.  For example, on a week where

Barb worked five days, his paystub would show a fringe benefit line item of $15.00. Heath asserts that the fringe benefit line item was included, as required by the Internal Revenue Service, so that Barb could be taxed on his use of a company vehicle. However, the same amount would also be simultaneously deducted from his paycheck and would be excluded from his gross pay.

Under the FLSA, covered employees are entitled to overtime for workweeks longer than forty hours, at a rate not less than one and one-half times the regular rate at which they are employed. 29 U.S.C. § 207(a). An employee's "regular rate" is defined as including "all remuneration for employment paid to, or on behalf of, the employee," with a list of exceptions. 29 U.S.C. § 207(e). Heath contends that since the fringe benefit was never paid to Barb, it is not remuneration. Barb claims that the amount reported to the IRS is the imputed value of the benefit rather than the benefit itself.

As Heath notes, this argument rewrites Barb's original position that the "taxable fringe" line item in his paystub should be included in his overtime calculation. Additionally, Barb's argument is untenable. Under Barb's reasoning, the benefit of any employer-provided items, such as laptops or office supplies, should be quantified and included in the employee's regular rate for the purposes of calculating overtime. Heath's emphasis on the fact that the ULs never received the fringe benefit payment is persuasive. "[F]or a payment to become part of the

employment agreement," as required to be considered remuneration for employment under the FLSA, "it must be regularly and actually received by the employee." *Sec'y U. S. Dep't of Lab. v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019). Therefore, Heath's taxable fringe benefit payments are not considered remuneration.

Heath further asserts that even if the fringe benefits are found to be remuneration, they are not remuneration for employment and thus should not be included in calculating the ULs' regular rate. Heath provides two reasons to support this argument. First, the fringe benefit relates to the ULs' commutes, which are non-compensable, and should be excluded from the regular rate of pay. The Portal-to-Portal Act, an amendment to the FLSA, "excludes from compensation such activities that 'occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.'" *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 363 (4th Cir. 2011) (quoting 29 U.S.C. § 254(a)(2)). The plaintiff argues that commuting is for employment, even if it is not compensable, as the ULs must commute to complete their job duties. In *Acton v. City of Columbia, Missouri.*, which the plaintiff cites, the Eighth Circuit held that sick leave buy-back payments constituted remuneration for employment since "consistent workplace attendance [was] a general duty of employment." 436 F.3d 969, 977 (8th Cir. 2006). However, in *Acton*, the purpose of the buy-back program was to encourage employees to come

to work regularly by monetarily rewarding attendance. *Id.* at 978. The employees received a lump sum amount after selling back their unused sick leave. *Id.* Here, the ULs do not receive monies from the imputed benefit because the amount is deducted from each paycheck. Heath has also presented compelling evidence that the fringe benefit line item exists solely for tax purposes, rather than an economic exchange between the parties such as payment for sick leave.

Second, Heath argues that the imputed benefit is not connected to any work-related duty and thus cannot be considered remuneration for employment. Heath states that the taxation is unimpacted by any quantity or quality of work performed by the ULs. The plaintiff insists that Heath benefits monetarily by having ULs drive company vehicles home instead of paying to have them stored in a central location. The plaintiff also notes that Heath saves money by having the ULs drive from their house to their first ticket of the day. If the vehicles were stored in a central location, Heath would have to pay ULs for the time it took to drive from the central location to their first ticket of the day. However, whether Heath saves money is irrelevant to this inquiry, and Heath's argument that the fringe benefit is unconnected to work performed by the ULs is correct. In *Acosta v. Mountain Masonry, Inc.*, I found that a "per diem" payment by the employer claimed to be reimbursement for travel expenses but "expressly tied to the number of hours worked . . . look[ed] more like compensation to be included in the workers' regular hourly rate." No.

1:16CV00042, 2018 WL 259773, at *4 (W.D. Va. Jan. 2, 2018); *see also* Jaime M. Niles, Annotation, *Expenses Incurred by Employee as Factor in Calculating Minimum Wage Under Fair Labor Standards Act, 29 U.S.C.A. §§ 201 et seq.*, 50 A.L.R. Fed. 3d § 48 (2020).  Because the imputed benefits here were linked to the ULs' commutes using company-owned vehicles, rather than the work they performed, they are not considered remuneration for employment as understood under the FLSA.

Lastly, Heath argues the fringe benefit at question is specifically excluded from the "regular rate" used in calculating overtime as defined by the FLSA.  The relevant section states:

> As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--
>
> . . . .
>
> (2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and *other similar payments* to an employee which are not made as compensation for his hours of employment.

29 U.S.C. § 207(e) (emphasis added).  Heath contends that its fringe benefit falls under the "other similar payments" clause.

FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and applied only in instances plainly and unmistakably within the exemptions' terms and spirit." *Morrison v. Cnty. of Fairfax,* 826 F.3d 758, 761 (4th Cir. 2016) (internal quotation marks and citations omitted). *See also Amaya v. Power Design, Inc.*, 833 F.3d 440, 445 (4th Cir. 2016) ("Congress intended the FLSA to apply broadly, with narrow and specific exceptions") (internal quotation marks and citations omitted). "Determining what is included in the regular rate of pay is a question that cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." *Clarke v. AMN Servs., LLC*, 987 F.3d 848, 853 (9th Cir. 2021) (internal quotation marks and citations omitted).

The U.S. Department of Labor (DOL) by regulation has clarified this "other similar payments" clause providing in part:

> Section 7(e)(2) also authorizes exclusion from the regular rate of other similar payments to an employee which are not made as compensation for his hours of employment. Such payments do not depend on hours worked, services rendered, job performance, or other criteria that depend on the quality or quantity of the employee's work. Conditions not dependent on the quality or quality of work include a reasonable waiting period for eligibility, the requirement to repay benefits as a remedy for employee misconduct, and limiting eligibility on the basis of geographic location or job position.

29 C.F.R. § 778.224(a). Under this regulation, a payment may still be understood to be compensation for services even if it is not "directly attributable to any particular

-26-

hours of work," such as bonuses or the furnishing of facilities like board and lodging. *Id.* Any payment that is excluded under the "other similar payments" clause must be "'similar' in character to the payments specifically described in section 7(e)(2)." *Id.* The DOL also provides examples of the types of payments intended to be excluded from the regular rate as "other similar payments," which include:

> The cost to the employer of conveniences furnished to the employee such as:
>
> (i)     Parking spaces and parking benefits;
>
> (ii)    Restrooms and lockers;
>
> (iii)   On-the-job medical care;
>
> (iv)    Treatment provided on-site from specialists such as chiropractors, massage therapists, physical therapists, personal trainers, counselors, or Employee Assistance Programs; or
>
> (v)     Gym access, gym memberships, fitness classes, and recreational facilities.

*Id.* at § 778.224(b)(3).

Barb argues that the fringe benefit is nothing like the first § 207(e)(2) category, which excludes "payments made for occasional periods when no work is performed due to vacation, holiday, [or] illness" from the regular rate of pay. 29 U.S.C. § 207(e)(2). Barb and the other ULs could only use the company vehicles to commute on workdays. Barb also states that the second category, which excludes "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the

furtherance of his employer's interests and properly reimbursable by the employer," is not analogous to the present benefit. *Id.* Barb contends that since the ULs have not incurred any travel expenses and the benefit in question is not similar to the listed categories of payments, it cannot be properly excluded under the "other similar payments" clause.

Heath asserts that payments not related to working hours or performance are excluded from the regular rate and cites *Tilson v. Tri-County Metropolitan Transportation District of Oregon*, which concerned a payment that compensated train operators for the inconvenience of having to begin and end a run in different locations. No. 3:19-CV-108-SI, 2020 WL 1249888, at *2 (D. Or. Mar. 16, 2020). The court looked to the collective bargaining agreement entered into by the employees and the company to evaluate the character of the rail allowance payment. *Id.* at *5. The agreement unambiguously stated that the payment was to compensate operators for the inconvenience of starting and ending a shift at different locations. *Id.* The court concluded that the "rail allowance payment [was] paid solely on this basis and [did] 'not depend on hours worked, services rendered, job performance, or other criteria that depend on the quality or quantity of the employee's work.'" *Id.* (quoting 29 C.F.R. § 778.224(a)). However, as stated above, a payment may still be understood to be compensation for services even if it is not "directly attributable to any particular hours of work." 29 C.F.R. § 778.224(a).

Several cases provide guidance.  "[A] payment's *function* controls whether the payment is excludable from the regular rate under § 207(e)(2)."  *Clarke*, 987 F.3d at 853.  In *Local 246 Utility Workers Union of America v. Southern California Edison Company*, the defendant, an electric utility company, argued that supplemental payments designed to bring the wage of a partially disabled work up to their pre-disability wage level should be excluded under the "other similar payments" clause in § 207(e)(2).  83 F.3d 292, 294–295 (9th Cir. 1996).  The Ninth Circuit disagreed and found that the payments operated as compensation as "[t]he entire function of these supplemental payments [was] to ensure that the workers [were] paid for their new, lower-classified work at the rate that they used to be paid."  *Id.* at 295.  "The payments necessarily compensate for hours of employment because they supplement a regular wage paid for work performed."  *Id.*

"In determining a payment's function, the tie between payments and time worked is relevant but not determinative."  *Clarke*, 987 F.3d at 853–54.  "Payments not tied to hours worked may function as compensation for work."  *Id.* at 854.  For example, in *Flores v. City of San Gabriel*, the Ninth Circuit held that cash-in-lieu-of-benefits payments may not be excluded under § 207(e)(2).  824 F.3d 890, 898 (9th Cir. 2016).  In cases where an employee of the city had alternate medical coverage, they could elect to forgo benefits from their employer and receive the unused portion of their allotment as a cash payment added to their paycheck.  *Id.* at

-29-

896. The city argued that the payments fell under "other similar payments" and should not be included in the plaintiffs' regular rate. *Id.* at 898. The court concluded that although the cash-in-lieu-of-benefits payments were not tied to hours, they were compensation for work. *Id.* at 900. Furthermore, the court found that payments at issue were too dissimilar to the first two § 207(e)(2) categories. *Id.*

Here, the function of the fringe benefits is not to compensate the ULs. The fringe benefits were listed on Barb's paystub to ensure that he was taxed on his commutes in a company-owned vehicle in compliance with IRS regulations. The fringe benefit is not tied to the quantity or quality of the ULs' work hours, which, while not dispositive, is relevant. Lastly, the fringe benefit seems akin to excluded payments noted by the DOL that include "the cost to the employer of conveniences furnished to the employee." 29 C.F.R. § 778.224(b)(3). While not directly analogous to parking benefits or restrooms, the fringe benefit is more like a cost taken on by Heath. By providing vehicles for the ULs to use to commute, and taking on the consequent tax burdens, Heath is furnishing a convenience. Therefore, I find that the fringe benefit should be excluded under the "other similar payments" clause in § 207(e)(2) and therefore cannot be calculated as part of the ULs' regular rate.

For these reasons, I find that summary judgment should be entered in favor of Health as to this claim.

## V.   Conclusion.

For the reason stated, it is **ORDERED** as follows:

1.  The defendant's Motion for Partial Summary Judgment, ECF No. 32, is GRANTED and judgment is entered in favor of the defendant as to the claim referred to by the plaintiff as the "fringe benefit scheme,"  which is a claim that it was a violation of law not to increase the ULs' regular rate of pay by the amount of the imputed benefit of $1.50 per one-way commute in the vehicle provided by the employer;

2.  Barb's Motion for Conditional Certification and Class Certification, ECF No. 30, is GRANTED except as to the claim referred to as the "fringe benefit scheme," for which summary judgment for the defendant has been granted herein; and

3.  The court will hereafter enter a separate order establishing the notices, consent/exclusion forms, and notice schedule, as well as appointing class counsel and requiring the employer to provide an accurate list of all employees within the collective and class definitions.

ENTER:   July 3, 2024

/s/  James P. Jones
Senior United States District Judge