**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| JAMES BARB, Individually and for Others Similarly Situated, | § § § § | Case No. 1:23-cv-00058-JPJ-PMS |
| Plaintiffs, | § § | Jury Trial Demanded |
| v. | § § | Rule 23 Class Action |
| HEATH CONSULTANTS, INC., | § § § § § | FLSA Collective Action |
| Defendant. | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND COLLECTIVE**

1. **INTRODUCTION**

This is a proposed collective and class action settlement of an unpaid wage and overtime action brought by James Barb, on behalf of himself and all others similarly situated, ("Representative Plaintiff" or "Plaintiff"), against Defendant Heath Consultants, Incorporated (incorrectly referred to in this action as "Heath Consultants, Inc.") ("Defendant" or "Heath"), (collectively, the "Parties"). In his Complaint, Plaintiff alleged that Defendant forced Plaintiff and other Hourly Utility Workers to perform work "off the clock;" thus, depriving Plaintiff and other Hourly Utility Workers of payment for all hours worked and overtime wages at the proper premium rate in violation of the Fair Labor Standards Act ("FLSA"), the Virginia overtime Wage Act ("VOWA"), and the Virginia Wage Payment Act ("VWPA").

As explained more fully below, the Parties have negotiated a settlement agreement (the "Agreement") that will resolve the claims of the Representative Plaintiff and both FLSA collective

members (the "Collective") and Rule 23 class members (the "Class"). By this Unopposed Motion, Plaintiff seeks certification, for settlement purposes only, of a settlement collective pursuant to the FLSA and a class pursuant to Federal Rule of Civil Procedure 23. Specifically, Plaintiff seeks approval of a settlement collective resolving the claims as a collective action.

The Collective the Parties ask this Court to preliminarily certify is:

All persons who, at any time beginning August 21, 2021 to the Approval Date, are or were employed in Field Technician positions by Heath or any Heath brand.

In addition, Plaintiff seeks preliminary approval of a settlement class resolving the claims as a class action. The Class the Parties ask this Court to preliminarily certify for settlement is:

All persons, who at any time beginning December 22, 2020 to the Approval Date, are or were employed in Field Technician positions in the State of Virginia by Heath or any Heath brand.

Under the terms of the settlement, each eligible individual will have the opportunity to participate, or not participate, in the settlement as he or she so chooses.

Defendant will be funding the settlement and has agreed to pay the total sum of $537,500.00 to the Settlement Collective and Class Members, inclusive of attorneys' fees, costs, and any court-approved service award to the Representative Plaintiff, James Barb, (the "Total Settlement Amount"). However, the Total Settlement Amount does not include Defendant's share of payroll taxes or the Settlement Administrator's fees and expenses. Defendant will separately pay the Settlement Administrator the employer side payroll taxes. Any amount of the Total Settlement Amount not claimed by the Class or Collective shall remain the property of Defendant.

Defendant will fund and tender the Total Settlement Amount, less the separately negotiated Settlement Attorneys' Fees and Costs (as defined in the Agreement) to the Settlement Administrator[1]. The Settlement Administrator will mail the Court-approved Notices and distribute funds to the

---

[1] The Parties have elected to use ILYM Group, Inc. as the Class Administrator.

Settlement Class and Collective Members by checks to each member. Any Settlement Check that remains unclaimed or uncashed after 180 days from the mailing date will be void and the funds will be transferred by the Settlement Administrator back to Defendant. The Agreement is filed with the Motion as Exhibit 1. The Parties reached the Agreement after mediating this matter before Ed Sullivan, following several weeks of arms-length negotiations and contested litigation.

The Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval.

2. **ISSUES PRESENTED**

By this Unopposed Motion, Plaintiff asks the Court to enter an Order: (i) effectuating this Agreement; (ii) preliminarily approving the terms and conditions of this Agreement; (iii) appointing Class Counsel; (iv) directing the manner and timing of providing Notice to the Class Members; (v) appointing the Settlement Administrator; and (vi) setting dates to effectuate the terms of this Agreement, including the date of the Fairness Hearing.

3. **SUMMARY OF FACTS AND PROCEDURAL HISTORY**

On December 22, 2023, Plaintiff filed this hybrid action asserting a collective claim for unpaid wages and overtime under the FLSA, as well as a Rule 23(b)(3) class claim under the VOWA and VWPA. On March 25, 2024, Plaintiff sought to conditionally certify a class for the FLSA collective action and to certify a Rule 23(b)(3) class based on Defendant's "ticket-to-ticket policy, "auto-deduct policy," and "fringe pay scheme." *See* ECF Nos. 30 and 31. On July 3, 2024, this Court granted summary judgment in favor of Defendant on Plaintiff's "fringe pay scheme." ECF No. 49. However, on August 21, 2024, this Court granted conditional certification and class certification based on the remaining claims. ECF No. 52. Pursuant to that Order, James Barb was appointed as class representative of the Virginia Class and lead plaintiff of the FLSA Collective; Josephson Dunlap, LLP, Bruckner Burch, PLLC, and Butler Curwood, PLC were appointed as class counsel; Defendant was

ordered to provide an updated mailing list of all potential members of the collective action and class action; the FLSA Collective Notice and Opt-In Form were approved; and the Virginia Class Notice and the Exclusion Form were approved. ECF No. 52. On June 18, 2025, the Parties mediated this matter with Ed Sullivan where the Parties came to an agreement, acknowledging Defendant's denial of all liability and in the interests of the risks for both parties associated with continued litigation.

Prior to the mediation, the Parties exchanged sufficient information and data through formal and informal discovery concerning the wages and hours worked by the Collective and Class to allow for meaningful and informed negotiation of the Total Settlement Amount. The Agreement reached resolves the claims made by the Collective and Class in this lawsuit against Defendant and calls for an opt-out settlement process. By this Motion, Plaintiff seeks, and Defendant does not oppose, preliminary Court approval of the Agreement.

**4.    SUMMARY OF SETTLEMENT TERMS**

**A.    The Settlement Fund**

The Parties have agreed to settle this matter for the Total Settlement Amount of Five Hundred Thirty-Seven Thousand and Five Hundred Dollars ($537,500.00). Included in that amount are the separately negotiated Class Counsel's Attorneys' Fees and Costs of $228,000 ($215,000 in separately negotiated fees and $13,000 in costs), $5,000.00 service award for the Representative Plaintiff James Barb, and $304,500.00 to the Settlement Class and Collective Members. The Settlement Shares are based proportionately on each Settlement Class or Collective Member's alleged unpaid overtime or other compensation during the Relevant Period. Alleged overtime damages were calculated based off time and pay data produced by Defendant with allocations to each Class Member based off of his/her hours and weeks worked. The individual allocations are Exhibit A to the settlement. Assuming the current Class Administration cost remains correct, the average total pretax Individual Settlement Amount to be received by the 348 Collective and Class Members is approximately $877.87. Ex. 2,

Schreiber Decl. ¶40. The actual amounts received will of course vary widely depending on the amount of overtime worked by each Class or Collective Member. Separately, Defendant has agreed to pay an amount up to $20,000.00 to the Settlement Administrator.

**B.     Schedule**

No later than 21 days following preliminary approval, Defendant, through its Counsel, shall provide to the Settlement Administrator an Excel spreadsheet listing each Collective and Class Member, along with the person's name, last-known residential address, and last four of digits of their social security number. Within that same time frame, Plaintiff's Counsel shall provide to the Settlement Administrator the amount of each Settlement Payment to each Collective and Class Member. No later than twenty-one (21) calendar days after the Court issues the Preliminary Approval Order, the Settlement Administrator will mail the Court-approved Notice to all Collective Members at the addresses provided by Defendant.

A Class Member who chooses to "opt out" must mail an Opt-out Statement postmarked within the Opt-out Period, which will be from the mailing of the Notice to the Class Member and not later than 45 days from the date of the Approval Order. Additionally, the date for individuals to provide objections will be determined by the Court, which will be from the mailing of the Notice to the Class and Collective Members and not later than 45 days from the date of the Preliminary Approval Order.

**C.     Releases**

Each Collective Member who has opted in and each Class Member who (1) does not opt-out of the settlement and (2) cashes their settlement check will release Defendant of all FLSA and any similar state wage and hour claim. The release reads as follows:

> In by operation of participation in the Settlement, each Settlement Class or Collective Member forever and fully settles, waives, releases, discharges, and dismisses with prejudice all known and unknown claims, rights, contract violations, or causes of action arising out of or relating to any alleged violation of the Fair Labor Standards Act, 29 U.S.C. §201, et seq., any and all

similar state wage and hour laws that may be applicable; breach of contract, unjust enrichment, quantum meruit; or any other federal, state or local law, statute, or regulation concerning unpaid wages, minimum wages, overtime wages, or the computation or payment of wages or compensation for work performed by Settlement Collective or Class Members for Defendant and/or the Released Parties, whether now known or unknown, that have been, or could have been asserted in this action, in any action in any court of competent jurisdiction, or in any federal or state agency administrative proceeding, by any Settlement Collective or Class Member individually or as a class against Defendant and against the Released Parties, which claims, rights, contract violations, or causes of action are in connection with, arose out of, or will arise out of or relate to the allegations that have been asserted in the above-captioned action ("Released Claims"). The foregoing releases extend to, and are expressly intended to extend to, all relevant claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected. Each Settlement Collective or Class Member expressly assumes the risk that after the execution and delivery of this Agreement he or she may discover facts which are different from those facts which were believed to be in existence on the date of execution. Any such discovery by any Settlement Collective or Class Member shall not affect the validity or effectiveness of the release contained herein. The foregoing Waiver and Release of Released Claims is from December 21, 2020 and through the date of the Approval Order. Collective Members who timely opt-out in accordance with this Agreement and the Court's Order approving this Settlement will not release any claims against Defendant.

In addition, the Representative Plaintiff, James Barb, upon entry of the Approval Order, agrees to release Defendant "from all claims asserted, or claims, rights, demands, liabilities, and causes of action that have been or could have been asserted, under all federal, state, and/or local laws." The effect of the Releases is to bar any further claims.

**D.     Representative Enhancement Payment**

In return for the risk he incurred and the services he rendered to the Class and Collective Settlement Members and in exchange for signing the general release, a Representative Enhancement Payment will be paid to the Representative Plaintiff, James Barb, in the amount of $5,000.00, subject to court approval.

**E.     Settlement Claims Administration**

The Parties have retain a third-party company, ILYM Group, Inc., to serve as the Settlement Administrator. Consistent with the Agreement, the Settlement Administrator's fees and expenses will be paid by Defendant directly in an amount of up to $20,000.00. Among other things, the Settlement

Administrator shall be responsible for administering and managing the notification of the Class and Collective Members and distribution of the Settlement Payments.

### F.     Proposed Notice Constitutes Best Notice Practicable

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e). The proposed Notice notifies Class Members of this class action and the claims asserted. The Notice is designed to inform the Class Members of the substantive terms of the proposed Agreement, their rights, the nature of the release, and how to participate or not participate in the settlement. It also serves to inform them how to file any objection should they wish to do so. Additionally, as part of the proposed Notice each recipient will be informed of her/his person specific allocation, their pro rata Individual Settlement Amount.

The Parties propose that the proposed Notice, where feasible, will be distributed via First Class Mail and/or email by the Claims Administrator.

### E.     Attorneys' Fees and Litigation Costs

Under the terms of the Agreement, subject to Court approval, the Parties agree that Class Counsel will receive $228,000.00, in attorneys' fees and costs. Such amount is the amount agreed to in its engagement agreement(s) with the Representative Plaintiff and is less than Class Counsel's lodestar, especially after the Settlement Notice Process and Final Approval. Ex. 2, Schreiber Decl. ¶46. Class Counsel will submit a request for Approval of Attorneys' Fees and Costs as part of, or in conjunction with, the Final Approval Motion, at a date to be set by this Court.

### 3.     ARGUMENT & AUTHORITIES

#### A.     Standard of Review

"Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement of a class action lawsuit, and further requires that class members receive notice of the settlement before the court approves it." *Winingear v. City of Norfolk*, No. 2:12CV560, 2014 WL 12526327, at *1 (E.D.

Va. June 5, 2014) The FLSA also requires court-approval of settlements. *Id.* (citing *Patel v. Barot*, No. 4:13cv59, 2014 WL 1624001, at *4 (E.D. Va. April 23, 2014)). "The factors governing court approval of settlements under Rule 23 and the FLSA are similar." *Id.* (citing *Lomascolo v. Parsons Brinckerhoff. Inc.*, No. 1:08cv1319, 2009 WL 3094955, at *11 (E.D. Va. Sep. 28, 2009)).

There are typically three stages applicable to the review of a proposed class action settlement. *See* Manual For Complex Litigation (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634.

**B.    The Court has already granted conditional certification and Rule 23 class certification and should find those requirements are still met for purposes of preliminary approval.**

Here, the Court previously conducted a full analysis of the FLSA and Rule 23 factors and found Barb demonstrated, that all of the requirements are met, and thus that conditional and class certification is appropriate. *See* Doc. 31. The Court certified conditional certification and class certification based on the "ticket to ticket" policy and auto-deduct policy. Doc. No. 52. The Court found Barb is an adequate Class Representative, and that Josephson Dunlap, Bruckner Burch, and Butler Curwood are adequate Class Counsel. *Id.*

For purposes of approving the settlement and facilitating notice of the settlement to the class members, there is no reason to disturb that finding. The same is true today as it was when the Court previously found numerosity, ascertainability, commonality, typicality, adequacy, predominancy, and superiority have been met. *See id.* For purposes of facilitating the Parties' Settlement Agreement, the

Court should likewise find those requirements are still met today for the same reasons already established by Barb through motion practice. *See* Doc. 31; Doc. 52.

        **C.**        **Preliminary approval of the settlement is appropriate.**

Rule 23(e) requires the Court to preliminarily evaluate the settlement for fairness. Such a review is generally split into two hearings, a preliminary approval hearing and a final approval hearing. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002). First, counsel submit the proposed terms of the settlement and the Court makes a preliminary fairness evaluation. *Id.* This initial evaluation can be made on the basis of information already known, or may be supplemented by briefs, evidence, or other presentations. *Id.* "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*

        **D.**        **The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation**

In determining a motion for preliminary approval of a class action settlement agreement, the Court reviews the proposed settlement to make a preliminary fairness evaluation. *See Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 U.S. Dist. LEXIS 54578, at *5 (D. Md. Apr. 25, 2016). Preliminary approval should be granted if the proposed settlement is within the range of possible approval. *Id.* Class Counsel submits that this settlement is well within the upper range of possible approval. As mentioned above, this settlement will provide Class Members (with alleged federal and state overtime damages) with settlement amounts well within the range of normal for off the clock cases. Ex. 2, Schreiber Decl. ¶40.

At this step, the court is only to determine whether there is "probable cause" that the proposed settlement is fair and reasonable. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1380 (D. Md. 1983). A settlement is fair where it is the product of good-faith, arm's length bargaining without

collusion. *In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). In determining fairness, courts look at "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.*

    1.    <u>The Proposed Settlement is Fair</u>

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the parties engaged in a protracted arms-length negotiation, informed by significant time and pay data furnished by Defendant, followed by a mediation.

    i.    *Posture of the Case*

Prior to mediation, Plaintiff created a comprehensive damages model using data provided by Defendant. The Parties served formal discovery and had discovery disputes regarding deposition and the appropriateness of representative discovery. Defendant moved for summary judgment which Plaintiff responded. Plaintiff moved for class and collective certification. Had the litigation continued, additional resources would have been expended on exhaustive litigation and discovery, but the Class's damages likely would not. At mediation the Parties were able to finalize the core settlement terms. The Parties then worked collaboratively to draft the comprehensive Agreement now presented for this Court's review and approval.

    ii.    <u>Extent of Discovery</u>

The Parties exchanged initial disclosures and formal discovery, and Defendant provided necessary data for the construction of Plaintiff's damages model. Such data related to hours worked, types of pay received, and potential damages. In addition to the formal discovery exchanged between the Parties, Class Counsel also conferred with the Named Plaintiff in this matter. These conversations

further corroborated the information received from Defendant and allowed Class Counsel to meaningfully negotiate on behalf of the Collective and Class Members.

Formal discovery in this case has been sufficient such that Defendant and the Plaintiff know the important facts affecting the case and have adequately assessed the respective benefits of settlement and potential risks of continued litigation. This included pay records, timesheets, and GPS data. Defendant's Counsel had to create a program to interpret the data in a meaningful way. In addition, Class Counsel committed substantial resources to investigating and analyzing the claims of the putative class. As referenced above, there were numerous disagreements over the extent of discovery from the Collective Members. The proposed settlement calculations are based on the pay and time data exchanged in discovery on behalf of the Collective and Class Members, supporting the fairness of the overall proposed settlement.

   iii.  <u>Circumstances Surrounding the Negotiations</u>

The negotiations that resulted in this settlement were conducted at arms' length before an experienced wage and hour mediator. At mediation, the Parties worked to resolve the final terms resulting in the settlement that is now being presented to the Court. The Parties have continued to work together to fully finalize the Agreement before this Court. The Parties exchanged drafts of the Agreement and worked to resolve settlement issues as they arose during the drafting process.

   iv.  <u>Experience of Counsel</u>

Class Counsel are experienced litigators who have devoted their practice to representing employees in wage and hour litigation. *See generally* Exhibit 2, Declaration of Richard M. Schrieber. Likewise, Defendant's Counsel are very experienced in wage and hour litigation and represent employers across Virginia and other numerous other states.

      v.      <u>Degree of Opposition to the Settlement</u>

Notice has already been issued to the Collective and Class Members. However, Class Members still have the opportunity to opt-out. This factor will be fully addressed in the motion for final approval, should this Court preliminarily approve the Agreement and authorize the issuance of Notice.

An examination of the four fairness factors clearly demonstrate this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining. Therefore, this proposed settlement should be approved as fair.

    2.    <u>The Proposed Settlement is Adequate</u>

Likewise, the adequacy factors equally favor approval of the proposed settlement. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

      i.      <u>Strength of Plaintiff's Case on the Merits</u>

Plaintiff has asserted that he was underpaid overtime wages by the Defendant due to a practice of requiring a 30-minute unpaid meal break. Defendant denies Plaintiff's allegations and asserts that Collective and Class Members either are not owed any overtime compensation, or were owed less than the amounts asserted in Plaintiff's damages model. Ultimately, liability would likely turn on whether Defendant, in fact, accurately paid Collective and Class Members as it has asserted, and whether Defendant had a good faith basis for its pay practices, making liquidated damages unavailable. Plaintiff believes that liability would have been found on these issues, and Defendant believes the opposite. The Agreement provides for substantial compensation for Plaintiff and Collective and Class Members' claims and negates the risk of a bad result.

    ii.  <u>Difficulties of Proof and Defenses</u>

In order to prevail on their claims, the Collective and Class would be required to prove that its policies were lawful. In addition, the Class would have to contend with Defendant's factual proof of correct payments and "good faith" affirmative defense that, if successful, would have precluded the recovery of damages, including liquidated damages. These uncertainties weigh in favor of the adequacy and certainty of the proposed settlement.

    iii.  <u>Duration and Expense of Additional Litigation</u>

This case has already spanned almost 2 years and the issues been adequately briefed. Should this litigation proceed, the length of time necessary to reach a final result would have occupied many more months or potentially years of judicial resources and vast amounts of attorney time. Further, litigating this case to conclusion would potentially cost each side hundreds of thousands of dollars in additional attorneys' fees while likely not resulting in significantly better recoveries for the Class.

Therefore, this factor also supports the adequacy of the proposed settlement.

    iv.  <u>Solvency of Defendant and Likelihood of Recovery</u>

The fourth adequacy factor, Defendant's financial solvency, does not bear significantly either way in considering the adequacy of the settlement. However, while Defendant appears to be currently solvent and in good financial health, Plaintiff has no idea if that will remain true years into the future—which is a reasonable timeline by which this litigation can be resolved, absent settlement. Defendant has agreed to pay now to resolve the pending litigation and is capable of funding the settlement payments according to the deadlines set forth herein. This proposed settlement provides compensation and a level of certainty for the Collective and Class—now, not several years into the future.

     v.  Degree of Opposition to the Settlement

  As notice of the settlement has not yet issued to the Collective/Class Members, review of this factor is premature. However, the Representative Plaintiff has approved of and willingly executed the Agreement before the Court.  Defendant and Plaintiff will have further insight regarding the degree of opposition to the settlement, if any, before the filing of the Final Approval Motion.

  Accordingly, all five of the adequacy factors favor approving this proposed settlement. Therefore, this proposed settlement should be approved as adequate.

## 4. CONCLUSION

  Wherefore the Representative Plaintiff, without opposition from the Defendant, requests that the Court preliminary approve the Agreement and enter the Proposed Order provided as an attachment to this Motion.


Respectfully submitted,

JAMES BARB, on behalf of himself and others similarly situated,
By Counsel


Michael A. Josephson (TSB No. 24014780)
Andrew Dunlap (TSB No. 24078444)
Richard Screiber (TSB No. 24056278)
Josephson Dunlap, LLP
11 Greenway Plaza, Suite 3050
Houston, TX 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
Email: mjosephson@mybackwages.com
Email: adunlap@mybackwages.com
Email: rschreiber@mybackwages.com

Richard J. (Rex) Burch, Esq.
Bruckner Burch, PLLC
11 Greenway Plaza, Suite 3025
Houston, TX 77046
Phone: (713) 877-8788
Fax: (713) 877-8065

Email: rburch@brucknerburch.com

Harris D. Butler, III (VSB No. 26483)
Zev H. Antell (VSB No. 74634)
Craig Curwood (VSB No. 43975)
Samantha Galina (VSB No. 96981)
Butler Curwood, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
Phone: (804) 648-4848
harris@butlercurwood.com
zev@butlercurwood.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on November 11, 2025, I electronically filed the foregoing document with the clerk of the court using the electronic case filing system which will send notice of the same to all counsel of record.

      */s/ Richard M. Schreiber*
      **Richard M. Schreiber**